IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

W. R. BERKLEY CORP.,

      *Plaintiff*,

  v.

JULIE ANN W. DUNAI,

      *Defendant.*

No. 1:19-cv-01223-SB

Scott A. Holt, YOUNG, CONAWAY, STARGATT & TAYLOR LLP, Wilmington, Delaware; Curtis J. Crowther, ROBINSON & COLE LLP, Wilmington, Delaware.

      *Counsel for Plaintiff.*

Daniel C. Herr, LAW OFFICE OF DANIEL C. HERR LLC, Wilmington, Delaware; Kristen E. Prinz, Amit S. Bindra, THE PRINZ LAW FIRM, P.C., Chicago, Illinois.

      *Counsel for Defendant.*

**MEMORANDUM OPINION**

September 28, 2022

BIBAS, *Circuit Judge*, sitting by designation.

    Julie Dunai's employer gave her stock incentives. That arrangement aligned their interests: the more profitable she made the company, the wealthier she would be. But there were strings attached. If Dunai left for a competitor, the company could take the stock back. She did, so the company exercised its right. Now she claims that the company acted in bad faith. It did not, so she must pay the company back.

## I. THE GIVE AND THE TAKE

Dunai, a corporate vice president, got more than $200,000 in stock benefits from her former employer's parent company, W. R. Berkley. D.I. 60-1 at A3. But those benefits came with a clawback provision: if Dunai took "Competitive Action" against the company within a year of leaving, the company could demand repayment. *Id.* at A7–10. (Technically, there were four separate provisions, one per contract for each stock distribution. But the relevant terms are the same, so I refer to all the contracts as one unit. *Id.* at A7–10, 22–26, 35–39, 49–53.)

The stock-benefit contract lays out the substance and procedure for determining whether Dunai took Competitive Action. Substantively, the contract defines "Competitive Action" as "engag[ing] in … business activities … which are competitive with any business activities conducted by [her former company] in [the company's] geographical area [of operation]." *Id.* at A8. Procedurally, it gives a Compensation Committee "sole and absolute discretion" to decide whether an act meets that definition. *Id.* at A9. Despite that language, the Committee's discretion is bounded. A court can second-guess the Committee's decision if it was made through "fraud or bad faith under Delaware law." *Id.* at A14.

Dunai eventually decided to leave for a high-ranking position at another company in the same industry. In her exit interview, she told HR the name of her new employer. D.I. 59-1 at 347. Dunai also received a letter about her continuing duties to her former employer. She was reminded to "review the [stock-benefit] agreements to fully understand [her] obligations, including an obligation to advise [W.R. Berkley] of a new employer and [her] position with such entity." D.I. 60-2 at A221. Those

agreements required Dunai to give W. R. Berkley detailed information about her new job. *See, e.g.*, D.I. 60-1 at A9–10. But she failed to do so.

About a month after Dunai started her new job, W. R. Berkley claimed that she had taken a Competitive Action. *Id.* at 48–51. The Committee met, reviewed a two-hundred-page packet, and unanimously agreed with W. R. Berkley. *Id.* at A98–114. Dunai refused to return the stock benefits, so W. R. Berkley sued.

At the motion-to-dismiss stage, Dunai argued that Illinois law applied and that the contract was unreasonable. D.I. 27 at 2–6. I rejected both arguments, instead finding the contract reasonable under Delaware law. D.I. 32 at 3–7.

Now, at summary judgment, Dunai contends that (1) because of a new Illinois statute, I should apply Illinois law; (2) the Committee acted in bad faith; and (3) the Committee breached the implied covenant of good faith and fair dealing. D.I. 61 at 3. All these arguments fail. Because there is no "genuine dispute as to any material fact" and W. R. Berkley "is entitled to judgment as a matter of law," I grant its summary-judgment motion and deny Dunai's. Fed. R. Civ. P. 56(c).

## II. DELAWARE LAW STILL APPLIES

I decided that Delaware law applies to this dispute. D.I. 32 at 3–5. Dunai now claims that a recent amendment to an Illinois statute changes the choice-of-law calculation. But that amendment governs only agreements "entered into after [its] effective date," January 1, 2022. 820 ILCS 90/5 (West 2022). Dunai entered into the stock-benefit contract long before that. D.I. 60-1 at A6, 21, 33, 47. So the amendment does not apply. Plus, the amendment has not changed Illinois's fundamental policy

3

on noncompete agreements. It remains a reasonableness test. 820 ILCS 90/7 (West 2022). So the choice-of-law ruling stands.

### III. THE COMMITTEE ACTED IN GOOD FAITH

The contract let the Committee decide whether Dunai engaged in a Competitive Action. D.I. 60-1 at A8. But a court may review that decision for fraud or bad faith. *Id.* at A14. Dunai challenges the Committee's decision by invoking that fraud-or-bad-faith provision plus the implied covenant of good faith and fair dealing. Under Delaware law, and as Dunai styles them, these are affirmative defenses: Dunai would bear the burden of proving them at trial. D.I. 35 at 11–15; *see KE Prop. Mgmt. Inc. v. 275 Madison Mgmt. Corp.*, 1993 WL 285900, at *7–10 (Del. Ch. July 27, 1993) (fraud and bad faith); *Daystar Const. Mgmt., Inc. v. Mitchell*, 2006 WL 2053649, at *6–7 (Del. Super. Ct. July 12, 2006) (implied covenant).

So to survive summary judgment, Dunai must make a "showing sufficient to establish the existence of an element essential to [her] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Here, rather than forcing W. R. Berkley to prove that it *did not* do something, Dunai's showing of fraud or bad faith must at least be better than "a complete failure of proof." *Id.* at 323.

Though neither party defines fraud or bad faith, Delaware law does. And the contract incorporates that body of law when it references "fraud or bad faith *under Delaware law*." D.I. 60-1 at A14 (emphasis added). To prove fraud or bad faith, Delaware law requires scienter. Dunai says nothing about the Committee's state of mind. So she has failed to make an adequate showing.

### A. Dunai fails to show bad faith

Dunai never alleges fraud, but she does claim bad faith. Showing bad faith is hard. The Committee might have been "ineffective, its actions obtuse, its results harmful … without implicating bad faith." *Okla. Firefighters Pension & Ret. Sys. v. Corbat*, 2017 WL 6452240, at *17 (Del. Ch. Dec. 18, 2017). To have acted in bad faith, the Committee must have (1) been motivated "by an actual intent to do harm" or (2) committed an "intentional dereliction of duty, a conscious disregard for [its] responsibilities." *McElrath v. Kalanick*, 224 A.3d 982, 991–92 (Del. 2020) (internal quotation marks omitted). Something "more … than gross negligence is required." *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 66 (Del. 2006).

But all Dunai alleges is a series of shortcomings in the Committee's deliberations. She says it (1) "rubber stamped" the clawback, (2) "reviewed incomplete and inaccurate information," (3) decided in a "categorically unclear" manner, (4) did not contact her, (5) "should have realized" that her new job "easily could have been non-competitive," and (6) reviewed blank pages in its packet. D.I. 59 at 12–13. Plus, the Committee Chair said she could not remember a time that, in her fifteen years on the Committee, it failed to find a Competitive Action. *Id.* at 6–7.

Even if true, these allegations fail to show a genuine dispute over bad faith. The information might have been incomplete, but the Committee still reviewed hundreds of pages of information about the two companies, noted Dunai's title at her new company, and unanimously found that her new job competed with her old company. D.I. 60-1 at A98–114; D.I. 60-2 at A217–503. And though Dunai highlights differences in the companies' relative size, revenue, and geographic reach, those differences do not

5

imply the absence of competition. Indeed, even Dunai admits that there is "minor" overlap. Dunai Dep. Tr., D.I. 59-1 at 364–68. Perhaps the Committee could have—or even should have—decided that Dunai's new job was noncompetitive. But negligence or unreasonableness falls far short of bad faith.

As noted, Dunai never invokes the fraud half of the fraud-or-bad-faith provision. But for the same reasons, her allegations do not show fraud. Fraud under Delaware law also requires scienter. *Metro Commc'n Corp. BVI v. Adv. Mobilecomm Techs. Inc.*, 854 A.2d 121, 143–44 (Del. Ch. 2004).

Dunai comes closest to bad faith in claiming that the Committee rubber stamped the clawback, reviewed blank pages, and has never failed to find a Competitive Action. But the rubber-stamping claim is just a tagline assertion; the other two are potential evidence of it.

As for the blank pages, Dunai might be on to something if the Committee really did review a packet full of white space. Yet nearly all the packet was filled with information. D.I. 60-2 at A217–503. Dunai focuses on the blank space on her LinkedIn page, but the Committee could still gather her new title from it. *Id.* at A226.

Finally, even if the Committee has never failed to find a Competitive Action, that does not create a genuine dispute over bad faith. It is, at best, a sliver of circumstantial evidence about scienter. And it says nothing about whether the Committee fulfilled its duties in Dunai's case. Without more, this one historical fact does not create a genuine dispute over the Committee's state of mind.

### B. The contract's express terms trump the implied covenant of good faith and fair dealing

As a catchall, Dunai argues that the Committee breached the implied covenant of good faith and fair dealing. This is another steep hill. *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010) (describing the covenant as an "extraordinary legal remedy").

Although the covenant "inheres in all contracts," it applies in just two situations. *Trumbull Radiologists, Inc. v. Premier Imaging Tri Holdings LLC*, 2021 WL 5577249, at *4 (Del. Super. Ct. Nov. 29, 2021); *see Oxbow Carbon & Mins. Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 504 n.93 (Del. 2019). First, it can "fill unanticipated contractual gaps." *Trumbull*, 2021 WL 5577249, at *4. Second, it kicks in "when a party to the contract is given discretion … and it is argued that the discretion has been used in a way that is impliedly proscribed by the contract's express terms." *Oxbow Carbon,* 202 A.3d at 504 n.93; *see also Blish v. Thompson Automatic Arms Corp.*, 64 A.2d 581, 597 (Del. 1948) ("The term 'absolute judgment,' as indicated, means a judgment based upon sincerity, honesty, fair dealing and good faith, not one evidencing caprice or bad faith.").

But the covenant "cannot be used to circumvent the parties' bargain, or to create a free-floating duty." *Trumbull*, 2021 WL 5577249, at *4 (internal quotation marks omitted). Here, express terms control. The contract specifies the definition that the Committee will apply, the procedure that it will follow, and the limits on its discretion. And those limits already let a court review the Committee's exercise of discretion for fraud or bad faith. So there is no discretion for the covenant to cabin or gap for it to fill.

7

\* \* \* \* \*

Dunai argues that her new work does not compete with her old company's. But she agreed to leave that decision to the Compensation Committee unless it intentionally did something wrong. Because Dunai fails to allege that kind of wrongful intent, she is bound by the Committee's decision. So I grant summary judgment for W. R. Berkley.